**GILBERT SWITZER & ASSOCIATES**

v.

**NATIONAL HOUSING PARTNERSHIP, LTD. and National Corporation for Housing Partnerships**

v.

**Gene DeMATTEO and DeMatteo Construction Company.**

Civ. No. N 85–574 (JAC).

United States District Court,
D. Connecticut.

May 20, 1986.

William H. Clendenen, Jr., Penny Q. Seaman, New Haven, Conn., for plaintiff.

Raymond A. Garcia, Todd Bainer, New Haven, Conn., for defendants.

Christine S. Vertefeuille, David C. Bloomberg, New Haven, Conn., for third-party defendants.

## RULING ON PENDING MOTIONS

JOSÉ A. CABRANES, District Judge:

This action arising out of the rehabilitation of Twin Towers, a subsidized housing project for the elderly in Bridgeport, Connecticut, is before the court on the plaintiff's motions for summary judgment and the third-party defendants' motion to dismiss.

The plaintiff, Gilbert Switzer & Associates ("Switzer"), was the architect for the Twin Towers project. The defendant National Housing Partnership ("NHP") is the only remaining general partner of the Twin Towers Associates limited partnership; the defendant National Corporation for Housing Partnerships ("NCHP") is the general partner of the National Housing Partnership. The third-party defendant DeMatteo Construction Company was the general contractor for the Twin Towers project and was formerly a general partner of Twin Towers Associates; the third-party defendant Gene DeMatteo is the principal officer and shareholder of DeMatteo Construction Company.

Switzer claims that it is owed certain fees for architectural services rendered on the Twin Towers project. This claim was submitted to arbitration in accordance with the terms of the contract between Switzer and Twin Towers Associates. Twin Towers apparently was represented at the arbitration by DeMatteo Construction Company pursuant to an agreement between DeMatteo Construction and National Housing Partnership. The arbitrator awarded Switzer the sum of $78,266. The award was confirmed by the Connecticut Superior Court, and that decision was affirmed by the Connecticut Appellate Court; certification was denied by the Connecticut Supreme Court.

In this action, Switzer seeks to recover the unsatisfied balance of the arbitration award from NHP as the general partner of Twin Towers Associates and from NCHP as the general partner of NHP. Switzer has moved for summary judgment on count one of its complaint as well as on the

defendants' first counterclaim, which alleges that Switzer was negligent in its work on the Twin Towers project. In addition, the third-party defendants have moved to dismiss the action on the ground that complete diversity is lacking between the parties; this motion is opposed by both the plaintiff and the defendants.

### I. Third-Party Defendants' Motion to Dismiss for Lack of Diversity

■ The court turns first to the third-party defendants' motion to dismiss the action on the ground that diversity of citizenship is lacking between the partners of the plaintiff and some of the limited partners of the defendant NHP.

Our Court of Appeals held in *Colonial Realty Corporation v. Bache & Company*, 358 F.2d 178, 183–184 (2d Cir.) (Friendly, J.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) ("*Colonial Realty*"), that the citizenship of a limited partner of a New York partnership was not to be considered in determining the existence of diversity jurisdiction because the limited partner would not have been "a proper party to proceedings by or against a partnership" under New York law. *See also Westville Holdings, Inc. v. American Petroleum Partners*, 592 F.Supp. 44, 46 (S.D.N.Y.1984); *Wroblewski v. Brucher*, 550 F.Supp. 742, 751 (W.D. Okla.1982); *Williams v. Sheraton Inns, Inc.*, 514 F.Supp. 22 (E.D.Tenn.1980); *C.P. Robinson Construction Company v. National Corporation for Housing Partnerships*, 375 F.Supp. 446, 449 (M.D.N.C.1974).

The same result is obtained by applying the *Colonial Realty* analysis to the facts of the instant case: The limited partners of NHP, a limited partnership organized under the laws of the District of Columbia, are not "proper part[ies]" to proceedings by or against" NHP as a matter of either Connecticut or District of Columbia law.

The third-party defendants have sought to distinguish the instant case from *Colonial Realty* on the asserted ground that "Connecticut law does not prohibit limited partners from suing or being sued on behalf of a limited partnership." Third Party Defendants' Memorandum in Support of Motion to Dismiss (filed April 21, 1986) ("Third-Party Defendants' Memorandum II") at 14. However, the only authority that the third-party defendants have cited in support of this proposition is C.G.S. § 34–34a,[1] which is applicable only to limited partnerships organized under the laws of Connecticut. *Compare* C.G.S. § 34–9(8) (defining "limited partnership" for purposes of the Connecticut Limited Partnership Act as "a partnership formed by two or more persons *under the provisions of this chapter* and having one or more general partners and one or more limited partners") (emphasis added) *with* C.G.S. § 34–9(5) (defining "foreign limited partnership" for purposes of the Connecticut Limited Partnership Act as "a partnership formed under the laws of any state other than this state and having one or more general partners and one or more limited partners").

Moreover, with respect to limited partnerships organized under the laws of other jurisdictions, C.G.S. § 34–38f ("Foreign Limited Partnerships, Governing Law") provides that "the laws of the state under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners." It is evident from this statutory language that the court must look to the

---

1. C.G.S. § 34–34a provides that

   [a] limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.

   It must be noted that this section does not provide the general authorization for limited partners to sue and be sued on behalf of their limited partnership that *Colonial Realty* indicated would be necessary before the citizenship of a limited partner could be considered in determining the existence of diversity jurisdiction. Accordingly, it is at least arguable that diversity jurisdiction would not be defeated even if the capacity of the limited partners to sue and be sued on behalf of NHP were governed by Connecticut law rather than District of Columbia law.

law of the District of Columbia to determine whether the limited partners may sue and be sued on behalf of NHP. There is nothing in C.G.S. § 34–38f or in any other provision of Connecticut law to support the third-party defendants' contention that, while District of Columbia law governs the *liability* of the limited partners to third parties, Connecticut law governs the *capacity* of the limited partners to sue and be sued by a third party on behalf of NHP.

Accordingly, the court holds that the Connecticut Limited Partnership Act reflects a clear legislative intent that District of Columbia law ought to govern the question of whether a limited partner is a "proper party to proceedings by or against" a limited partnership organized under the law of the District of Columbia.[2]

The law with respect to whether a limited partner is "a proper party to proceedings by or against a partnership" is substantially identical in New York and the District of Columbia. *Compare* New York Partnership Law § 115[3] *with* D.C.Code § 41–226.[4] Neither jurisdiction permits a limited partner to sue or be sued on behalf of his limited partnership except "where the object is to enforce a limited partner's right against or liability to the partnership." D.C.Code § 41–226. Accordingly, the rule that diversity jurisdiction is not defeated by the citizenship of a limited partner who is not "a proper party to proceedings by or against a partnership" must produce the same result in the instant case as in *Colonial Realty*.

A different outcome is not required by the decision of the Supreme Court in *Navarro Savings Association v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("*Navarro*"), which required the citizenship of the trustees of a business trust to be considered in determining the existence of diversity jurisdiction. The relationship between the trustees and the business trust in *Navarro* was significantly different from the relationship between the limited partners and the partnership in *Colonial Realty* or in the instant case. For example, the trustees, unlike limited partners, had the "power to transact [the trust's] business, to execute documents, and 'sue and be sued in the name of the Trust or in their names as Trustees of the Trust.'" *Navarro, supra*, 446 U.S. at 459, 100 S.Ct. at 1781. The trustees also had the authority to "invest the funds of the trust, lend money, and initiate or compromise lawsuits relating to the trust's affairs." *Id.* The court therefore "find[s] nothing in the Supreme Court's decision in *Navarro* which permits or requires this court to foresake the binding precedent of *Colonial Realty.*" *Westville Holdings, Inc. v. American Petroleum Partners*, 592 F.Supp. 44, 46 (S.D.N.Y.1984).[5]

---

**2.** A different result is not suggested by Rule 17(b), Fed.R.Civ.P., which provides, in pertinent part, that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." As noted above, there is nothing in Connecticut law to suggest that the Connecticut corporations that are limited partners of NHP have the capacity to sue or be sued on behalf of NHP; instead, Connecticut law indicates that these corporations would be permitted to sue and be sued in Connecticut on behalf of NHP only if they were permitted to do so under the law of the District of Columbia. *See supra* at 152–153 and note 1. A contrary rule would presumably mean that the Connecticut limited partners of NHP could sue or be sued in Connecticut on behalf of NHP whereas the New York and District of Columbia limited partners could not. It is unlikely that such a curious and potentially inequitable result could have been intended by the Connecticut legislature.

**3.** New York Partnership Law § 115 provides, in pertinent part, that "[a] contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right or liability to the partnership."

**4.** D.C. Code § 41–226 provides, in pertinent part, that "[a] contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."

**5.** It is true that the reasoning of *Colonial Realty* has been criticized by panels of other Circuits. *See, e.g., Carlsberg Resources Corporation v. Cambria Savings and Loan Association*, 554 F.2d 1254, 1260–1262 (3d Cir.1977); *Elston Investment Limited v. David Altman Leasing Corporation*, 731 F.2d 436, 438 (7th Cir.1984). However, other authorities have praised the *Colonial*

Accordingly, the third-party defendants' motion to dismiss is hereby denied.

## II. Plaintiff's Motion for Summary Judgment on Count One of the Complaint

■ The plaintiff has moved for summary judgment on count one of the complaint. The plaintiff seeks in this count to hold the defendants liable for a judgment entered against the Twin Towers Associates limited partnership.

The court may grant summary judgment only if it finds that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American International Group, Inc. v. London American International Corporation*, 664 F.2d 348, 351 (2d Cir.1981), *quoting Heyman v. Commerce & Industry Insurance Company*, 524 F.2d 1317, 1319–1320 (2d Cir.1975). In determining whether there is any material issue of fact, the court must "resolve all ambiguities and draw all inferences against the moving party." *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981).

The defendants and third-party defendants offer three arguments in opposition to the plaintiff's motion for summary judgment: First, the third-party defendants contend that "under the prevailing rule, resort may be had to the individual property of a partner for the payment of debts of the partnership only where the partnership's assets have been exhausted." Third Party Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (filed April 7, 1986) ("Third-Party Defendants' Memorandum I") at 14. Accordingly, the third-party defendants assert that the plaintiff, having failed to establish that the assets of Twin Towers Associates are exhausted, cannot

yet resort to the individual assets of NHP and NCHP "[a]s a matter of law." *Id.*

However, the third-party defendants have offered no support for their contention that the so-called "prevailing rule" requiring the exhaustion of partnership assets has been adopted in Connecticut. Indeed, a contrary rule is suggested by the Connecticut Supreme Court's observation that

> [a] creditor of a partnership can look to partnership property to satisfy his claim, or he can, at his option, enforce his judgment by direct levy upon the estate of any partner with an entire disregard of the partnership property.

*Robinson v. The Security Company*, 87 Conn. 268, 281, 87 A. 879 (1913). It appears that this rule has not been questioned in any subsequent decision of the Connecticut Supreme Court or any Connecticut lower court. Accordingly, there is no basis from which the court could predict that the exhaustion requirement urged by the third-party defendants would be adopted by the Connecticut Supreme Court. *See generally Holt v. Seversky Electronatom Corporation*, 452 F.2d 31, 34 (2d Cir.1971) (Feinberg, J.) (in the absence of controlling state authority, "we are forced, as a federal court vested with diversity jurisdiction, to do the best we can in estimating 'what the state court would rule to be its law,'" *quoting Bernhardt v. Polygraphic Company of America, Inc.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring)).

The second argument offered in opposition to the plaintiff's motion for summary judgment is that "[d]ue process and Connecticut law require that the defendants have an opportunity to contest the plaintiff's claim in count I of the complaint on the merits before defendants can be held personally liable for [Twin Towers Associates'] judgment debt." Third-Party Defendants' Memorandum I at 9. These ar-

---

*Realty* decision. *See, e.g.,* C. Wright, *Federal Practice and Procedure* § 3630, n. 53 (1985); *Westville Holdings, Inc. v. American Petroleum Partners,* 592 F.Supp. 44, 46 (S.D.N.Y.1984). In any event, the decisions of Courts of Appeals of

other Circuits are not binding on this court. *See, e.g., Securities and Exchange Commission v. Shapiro,* 494 F.2d 1301, 1306 n. 2 (2d Cir.1974) (Hays, J.).

guments were rejected by the Connecticut Supreme Court in the substantially similar case of *Dayco Corporation v. Fred T. Roberts and Company*, 192 Conn. 497, 472 A.2d 780, 784–785 (1984) ("*Dayco*"), which held that neither Connecticut law nor due process was offended by holding a partner liable for the judgment debt of her partnership even though she had received no notice of the arbitration proceedings or the suit to confirm the arbitration award.

It is nonetheless argued that the defendants are entitled under *Dayco* to reopen the merits of the arbitration award in the instant action because they did not participate in the arbitration between the plaintiff and Twin Towers Associates. This contention is inconsistent with the language of *Dayco*, which provides that "the joint obligation of the partners was *conclusively established*" at the time that the arbitration award against the partnership was confirmed by the state Superior Court. *Id.* at 784 (emphasis added). A fair reading of *Dayco* suggests that the partners may be permitted in a subsequent proceeding against them to contest their status as members of the partnership or to offer other reasons why they cannot be held liable for the obligations of the partnership; however, there is nothing in *Dayco* to suggest that the partners are entitled to reopen the merits of the arbitration award in the subsequent proceeding.

Moreover, the record of this case reveals that the defendants were fully aware of the arbitration proceedings at or before the time that those proceedings took place. Indeed, a letter of agreement between the defendants and third-party defendants, which was dated October 28, 1983 and accepted by an officer of the defendants on October 31, 1983, states:

> The Architect for the project, Gilbert Switzer and Associates, ("Architect") has instituted an arbitration proceeding against Twin Towers claiming an award for certain fees. DeMatteo believes such claim is unfounded and believes that Architect is liable to Twin Towers for negligence and breach of contract in the preparation of the plans and specifications and in the supervision of the construction. DeMatteo agrees to hold Twin Towers harmless and indemnify Twin Towers for any awards, judgments or recoveries, costs or expenses resulting from such arbitration. Twin Towers does hereby assign to DeMatteo all of its claims and all awards, judgments or recoveries against the Architect and hereby appoints DeMatteo as its attorney in fact to prosecute such claims and enforce and collect all awards, judgments or recoveries resulting from such arbitration. NHP and Twin Towers agree to cooperate in the arbitration and to make available to DeMatteo such records as DeMatteo shall reasonably request.

Memorandum in Opposition to Plaintiff's Motion for Summary Judgment Against Defendants/Third-Party Plaintiffs As to Count 1 of the Complaint (filed April 7, 1986) ("Defendant's Memorandum"), Exhibit 3.

The Supreme Court has held that "[t]he due process rights to notice and hearing prior to a civil judgment are subject to waiver" so long as the waiver is "voluntary, knowing, and intelligently made." *D.H. Overmyer Company v. Frick Company*, 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972) ("*Overmyer*"). *See also National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964) ("it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether").

It has not been asserted that the defendants or their counsel were unaware of the contents or the potential significance of the letter of agreement, which purported to assign to the third-party defendants the rights and responsibilities of Twin Towers Associates and the defendants with respect to the arbitration proceedings brought by the plaintiff. It likewise has not been asserted that the letter of agreement constituted some sort of contract of adhesion.

In sum, the defendants, as demonstrated by their own uncontroverted evidence, not only had actual notice of the arbitration brought by the plaintiff but also "voluntarily, knowingly, and intelligently" relinquished their role in the arbitration to the third-party defendants. The defendants therefore cannot complain in connection with the instant motion that they acted unwisely in failing to assume responsibility for the arbitration brought by the plaintiff.[6]

Accordingly, even if one assumes for the argument that a partner might in some circumstances have a due process right to contest on the merits a judgment entered against his partnership in proceedings of which he was unaware, *see, e.g., Detrio v. United States,* 264 F.2d 658 (5th Cir.1959), the defendants clearly have waived any such rights in the instant case. A contrary result would be inconsistent with the strong public policy favoring arbitration, *see, e.g., Fuller v. Guthrie,* 565 F.2d 259, 261 (2d Cir.1977) (Kaufman, C.J.), for parties to a contract could then simply assign their arbitrable claims to unrelated persons and thereby avoid the binding effect of any unfavorable decision by the arbitrator.

Finally, it is argued that the plaintiff's motion for summary judgment must fail because "[t]he defendants' counterclaim presents genuine issues that must be tried, and since it arises out of the transaction which is the subject matter of the plaintiff's claim." Third-Party Defendants' Memorandum I at 16. However, for the reasons stated above, the defendants cannot relitigate the merits of the arbitration award by raising the allegations of architectural malpractice presented in the first counterclaim. Moreover, as counsel for the plaintiff conceded at oral argument, to the extent that the first counterclaim raises a separate claim against the plaintiff apart from the arbitration award, any such claim would survive the granting of the plaintiff's motion for summary judgment on count one of the complaint. This factor

distinguishes the instant case from the cases cited by the third-party defendants in their memorandum of law.

Accordingly, for the reasons stated above, the plaintiff's motion for summary judgment with respect to count one of the complaint is hereby granted.

### III. Plaintiff's Motion for Summary Judgment on Defendants' First Counterclaim

■ The plaintiff has moved for summary judgment on the defendants' first counterclaim, which alleges that the plaintiff was negligent in its work on the Twin Towers project. It is argued that any such counterclaim is barred by the two-year statute of limitations of C.G.S. § 52–584. The defendants respond that the plaintiff's statute-of-limitations defense is inapplicable because their counterclaim is merely one for recoupment; in other words, the defendants contend that they are not seeking affirmative relief but are only seeking to reduce the amount that the plaintiff can recover in this action.

The Supreme Court has recognized that a claim for recoupment is "never barred by the statute of limitations so long as the main action itself is timely." *Stone v. White,* 301 U.S. 532, 539, 57 S.Ct. 851, 854, 81 L.Ed. 1265 (1936). *See also Luckenbach Steamship Company v. United States,* 312 F.2d 545, 549 n. 3 (2d Cir.1963) ("a defense of recoupment survives as long as the cause of action on the claim exists"); *Beecher v. Baldwin,* 55 Conn. 419, 432, 12 A. 401 (1887); *Jewett City Trust Company v. Gray,* 35 Conn.Sup. 508, 390 A.2d 948, 949 (1977).

The Connecticut courts have recognized that, in order to state a claim for recoupment, the defendant must establish that

(1) the defense arises out of the transaction constituting the plaintiff's cause of action; and

(2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery.

---

6. The court intimates no view with respect to the possible effect of the October 1983 letter of

agreement as between the defendants and the third-party defendants.

*Genovese v. J.N. Clapp Company, Inc.*, 4 Conn.App. 443, 495 A.2d 1079, 1081 (1985). *See also* J. Moore, 3 *Moore's Federal Practice* ¶ 13.11 (1985) (a claim for recoupment "is necessarily based on matters arising out of the transaction sued on").

It appears on the basis of the record before the court that the plaintiff's claim and the defendants' counterclaim arise out of a single "transaction": the plaintiff's performance of a contract to render architectural services in the rehabilitation of the Twin Towers project. *Cf. Jewett City Trust Company v. Gray, supra*, 390 A.2d at 949 (holding that creditor's claim for balance due on promissory note and debtor's counterclaim alleging violation of Truth in Lending Act arose out of same transaction).

Accordingly, the court holds that the defendants' first counterclaim, to the extent that it seeks merely to reduce the plaintiff's claim and not to recover any balance due from the plaintiff, is not barred by the applicable statute of limitations. The plaintiff's motion for summary judgment on the defendants' first counterclaim is therefore denied on the condition that the defendants amend their pleadings to indicate that they do no seek affirmative relief in excess of any amount recovered by the plaintiff.

### Conclusion

For the reasons stated above, the third-party defendants' motion to dismiss and the plaintiff's motion for summary judgment on the defendants' first counterclaim are denied. The plaintiff's motion for summary judgment on count one of the complaint is granted.

It is so ordered.